**Lucia MANZO, Plaintiff,**

v.

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant.**

Civ. A. No. 91–107.

United States District Court, D. New Jersey.

Dec. 18, 1991.

---

**6.** At oral argument, defendant withdrew its re-quest for attorney's fees.

Daniels & Solomon, P.A. by Steven Gaechter, Newark, N.J., for plaintiff.

Michael Chertoff, U.S. Atty. by John C. Jeannopoulos, Sp. Asst. U.S. Atty., Newark, N.J., for defendant.

## OPINION

BISSELL, District Judge.

Plaintiff Lucia Manzo seeks review of the final decision of the Secretary of Health and Human Services (the "Secretary") which denied plaintiff disability insurance benefits under the Social Security Act (the "Act"). This Court's jurisdiction is established by 42 U.S.C. § 405(g).

Plaintiff alleges that the record lacked substantial evidence to support the Secretary's findings. Plaintiff also claims the Administrative Law Judge ("ALJ") committed reversible error by failing to advise plaintiff of her right to counsel and her right to have a translator present at the hearing. In addition, Mrs. Manzo claims the ALJ failed to question her regarding her condition prior to the date last insured. Plaintiff requests that the decision be reversed, or, in the alternative, the case be remanded for reconsideration.

## PROCEDURAL HISTORY

Plaintiff filed an application for disability benefits under the Social Security Act on June 7, 1988, alleging disability since March 30, 1985 due to rheumatoid arthritis. (Tr. 67–69). The application was denied both initially and upon reconsideration. (Tr. 70–74, 83–84). Plaintiff requested a hearing with an ALJ who considered the case and denied plaintiff's application on November 20, 1989. This became the final decision of the Secretary when, on July 12, 1990, the Appeals Council denied plaintiff's request for review. (Tr. 5). Plaintiff now seeks review of the decision in this Court.

## STATEMENT OF FACTS

Plaintiff, at the time of the hearing, was 56 years old and was born in Italy where she completed a fifth-grade education. Plaintiff testified that she can read and write Italian but can only write and speak English "a little bit." (Tr. 38). She came to America in 1953 and since that time her only relevant work experience was as a seamstress. (Tr. 39–41). Plaintiff appeared at the hearing without counsel or a translator, but was accompanied by her two sons.

Plaintiff testified that her normal workday consisted of putting lining in heavy fur coats and joining the coat. She indicated she was ordinarily seated at a machine and that there was no lifting or carrying. (Tr. 41–42). Plaintiff has not worked since March 30, 1985, claiming rheumatoid arthritis affects her back and hands. (Tr. 51).

At the hearing, plaintiff testified to pain in her lower back. (Tr. 50–51). She also complained of pain, loss of strength, dexterity and sensation in her fingers. (Tr. 51). Because of her pain, plaintiff claims she cannot do housework and sometimes has difficulties holding objects including a glass or a spoon to eat with. (Tr. 56).

The medical evidence demonstrates that the plaintiff has suffered from lumbar disc disease with sciatic neuralgia since 1983. She was first treated by Dr. Robert Mazza in April 1983, whose findings at that time

included limited range of motion in the spine with muscle spasm and sensory deficits. Dr. Mazza reported that plaintiff was disabled, and therefore prevented from working since 1983. (Tr. 133–35).

Plaintiff also suffers from mixed forms of arthritis affecting the cervical and lumbar spine, both shoulders, knees and hand joints as reported by her treating physician, Dr. Rotella. (Tr. 129–30). In 1988, Dr. Rotella referred plaintiff to a rheumatologist, Dr. Restivo, who found swelling and tenderness of the hands and knees and performed blood tests confirming a diagnosis of rheumatoid arthritis. (Tr. 131–32).

Since 1985, plaintiff was also treated for polyarticular arthritis by Dr. Irving, an orthopedic surgeon. Dr. Irving's history noted mixed forms of osteo and rheumatoid arthritis involving the cervical and lumbar spine, adhesive capsulitis in both shoulders, pain in the lower back, shoulders and hands with pain radiating into the lower extremities. (Tr. 138–39).

In his decision denying plaintiff's application, the ALJ found that although plaintiff was presently disabled under the Act, disability was not established prior to March 31, 1985, when disability status was determined to have lapsed. A request to review the decision was denied by the Appeals Council which modified the ALJ's decision, determining that insured status was last met on December 31, 1984. (Tr. 5). Plaintiff now seeks review of this decision which constitutes a final decision of the Secretary.

## DISCUSSION

### A. Standard of Review

A reviewing court must accept findings of fact by the Secretary if those findings are supported by "substantial evidence." 42 U.S.C. § 405(g). The Supreme Court defines "substantial evidence" to mean "such relevant evidence as a reasonable mind might accept to support a conclusion" which is "more than a mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Company*

*v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). *See also Morales on behalf of Morales v. Bowen*, 833 F.2d 481, 488 (3d Cir.1987). The Third Circuit has further qualified "substantial evidence:"

> This oft-cited language [describing the standards of substantial evidence] is not, however, a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence vel non of substantial evidence is not merely a quantitative exercise. *Wallace v. Secretary of Health and Human Services*, 722 F.2d 1150 [3rd Cir.] (1983). A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g. that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion.... The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.

*Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir.1983) (citations omitted).

### B. Burdens of Proof

In order for this Court to perform its function, it is useful to review the procedures that occur before the ALJ. Particularly important is the question of the burden of proof before the ALJ.

In *Rossi v. Califano*, 602 F.2d 55 (3d Cir.1979), the court described the procedural aspects involved in shifting burdens of proof:

> There is a two-pronged test for social security act disability: (1) determination of the extent of disability and (2) determination whether that impairment results in inability to engage in substantial gainful activity. A claimant satisfies her initial burden of proof by showing that she is unable to return to her customary occupation. *E.g., Stark v. Weinberger*, 497 F.2d 1092 (7th Cir.1974); *Baker v. Gardner*, 362 F.2d 864 (3d Cir.1966).

Once she has made such a demonstration, the burden of proof shifts to the Secretary to show that the claimant, given her age, education and work experience, has the capacity to perform specific jobs that exist in the national economy. *E.g., Lewis v. Weinberger,* 541 F.2d 417 (4th Cir.1976); *Hernandez v. Weinberger,* 493 F.2d 1120 (1st Cir.1974). (*Id.* at 57). Section 423(d)(1)(A) states in relevant part:

[that the claimant must establish an] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...

The statute further provides that:

An individual shall be determined to be under a disability only if ... his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

Since the statute does not define "substantial gainful activity," the Secretary has promulgated a definition:

Substantial gainful activity is work activity that is both substantial and gainful:

(a) Substantial work activity. Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.

(b) Gainful work activity. Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.

(c) Some other activities. Generally, we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity.

20 C.F.R. § 404.1572.

The governing statute defines a physical or mental impairment as a condition

that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically accepted clinical and laboratory diagnostic techniques.

42 U.S.C. § 423(d)(3).

Moreover,

[a]n individual shall not be considered to be under disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require.

42 U.S.C. § 423(d)(5)(A).

Therefore, in determining what would appear sufficient, for purposes of the substantial evidence test, "the Secretary [needs] to demonstrate, to the satisfaction of a reviewing court, that there exist[ ] many jobs capable of being filled by an individual with the claimant's characteristics." *Santise v. Schweiker,* 676 F.2d 925, 938 (3d Cir.1982). The Secretary must determine whether claimant's impairment hinders her returning to her former employment, or "whether the claimant retains the capacity to pursue less demanding work." *Heckler, Secretary of Health and Human Services v. Campbell,* 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). Thus, relying on the substantial evidence rule, where no such evidence exists on the merits a consideration of reversal or remand from the Secretary's findings is warranted. *See Garrett v. Richardson,* 471 F.2d 598, 604 (8th Cir.1972).

### C. The ALJ's Findings

Following a hearing held before Administrative Law Judge John M. Farley on August 7, 1989, the following findings were issued in the present matter and incorporated into the final decision of the Secretary on July 12, 1990:

a. The claimant met the disability insured status requirements of the Act on March 30, 1985, the date the

claimant stated she became unable to work, and continued to meet them through March 31, 1985.[1]

b. The claimant has not engaged in substantial gainful activity since March 30, 1985.

c. The medical evidence establishes that the claimant has rheumatoid arthritis, not established as present through March 31, 1985 and osteoarthritis, but that she does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

d. The claimant's allegations of disability are not substantiated by the evidence of record.

e. The claimant had the residual functional capacity to perform the physical exertion requirements of work except for more than light work through March 31, 1985. There are no nonexertional limitations (20 C.F.R. 404.1545).

f. The claimant had the residual functional capacity to perform the full range of at least light work through March 31, 1985 (20 C.F.R. 404.1567).

g. The claimant is 56 years old, which is defined as advanced age. At the alleged onset date of March 30, 1985 she was 52, considered closely approaching advanced age (20 C.F.R. 404.1563).

h. The claimant has a limited education (20 C.F.R. 404.1564).

i. In view of the claimant's age and residual functional capacity, the issue of transferability of work skills is not material.

j. Section 404.1569 of Regulations No. 4 and Rules 202.10 and 202.11, Table No. 2 of Appendix 2, Subpart P, Regulations No. 4, directs a conclusion that, considering the claimant's residual functional capacity, age, education, and work experience, she was not disabled through March 31, 1985 when insured status lapsed.

k. The claimant was not under a "disability" as defined in the Social Security Act, for purposes of Title II through March 31, 1985 (20 C.F.R. 404.1520(f)).

(Tr. 12–18).

*D. This Court's Review of the ALJ's Findings*

A reviewing court "retain[s] a responsibility to scrutinize the entire record and to reverse or remand if the Secretary's decision is not supported by substantial evidence." *Smith v. Califano,* 637 F.2d 968 (3d Cir.1981); *Baerga v. Richardson,* 500 F.2d 309, 313 (3d Cir.1974), *cert. denied,* 420 U.S. 931, 95 S.Ct. 1133, 43 L.Ed.2d 403 (1975). "Further, even if the Secretary's factual findings are supported by substantial evidence, this Court may review whether the administrative determination was made upon correct legal standards." *Strickland v. Harris,* 615 F.2d 1103, 1108 (5th Cir.1980); *McCarty v. Richardson,* 459 F.2d 3, 4 (5th Cir.1972).

 First, plaintiff contends that this Court should reverse the decision of the Secretary because the record, taken as a whole, does not contain substantial evidence to support the Secretary's findings. Plaintiff must establish that she became disabled prior to the expiration of her insured status. *Kane v. Heckler,* 776 F.2d 1130, 1131 n. 1 (3d Cir.1985). Evidence of an impairment which reached disabling severity after the date last insured, or which was exacerbated after this date, cannot be the basis for the determination of entitlement to a period of disability and disability insurance benefits, even though the impairment itself may have existed before plaintiff's insured status expired. *Arnone v. Bowen,* 882 F.2d 34, 37–38 (2d Cir.1989); *DeNafo v. Finch,* 436 F.2d 737, 739 (3d Cir.1971); *Jackson v. Heckler,* 580 F.Supp. 1077, 1078–79 (E.D.Pa.1984). Further, the existence of a disability prior to the expira-

---

**1.** The Appeals Council modified the decision of the ALJ and determined that insured status was last met on December 31, 1984.

tion of insured status must be established by adequate medical evidence. Plaintiff cannot sustain her burden of proof merely by means of conclusory, self-serving testimony that she was disabled at the crucial time. *Gonzalez v. Schweiker*, 540 F.Supp. 1256, 1258 (E.D.N.Y.1982).

Plaintiff relies on the medical report of Dr. Mazza, a chiropractor, who was of the uncontroverted opinion that plaintiff was disabled since 1983. (Tr. 135). From 1983, Dr. Mazza's examination revealed pain in the lower back and neck, limited range of motion, spasm in the para-spinal areas with radiating reflex deficits into the upper and lower extremities. He further found, "patient is unable to sit, stand, bend or walk in a normal fashion." (Tr. 133). Dr. Mazza also concluded that plaintiff was last fit for regular work in 1983 based on his diagnosis of osteoarthritis. (Tr. 135).

Dr. Mazza treated plaintiff "on and off" since April 26, 1983 for acute episodes of pain. (Tr. 133).[2] Dr. Mazza noted that the episodes "number several per year and last sometimes days, but occasionally for weeks." (Tr. 135). Such episodes do not satisfy the definition of disability under the Act. Disability is an inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death or which has lasted or can be expected to last for a *continuous* period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). Disability also requires more than the mere inability to work without pain. To be disabling, pain must be so severe, by itself or in combination with other impairments, to preclude any substantial gainful activity. *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983).

Plaintiff was also treated by Dr. H.C. Irving, III. Dr. Irving first examined plaintiff in June 1985, six months after her date last insured. He initially found evidence of polyarticular osteoarthritis. He indicated that more recently plaintiff had

also been found to have rheumatoid arthritis, in addition to her osteoarthritis. (Tr. 138). In a report dated October 7, 1989, Dr. Irving concluded that plaintiff was totally disabled "at this time," but did not refer this total disability back to the period prior to the onset of the rheumatoid arthritis or the date last insured.

Plaintiff also received treatment from Dr. Frank Rotella in 1988. Dr. Rotella concluded that plaintiff was disabled due to rheumatoid arthritis but described the condition as being of "recent onset." (Tr. 130). In addition, plaintiff was examined by Dr. Restivo who confirmed Dr. Rotella's diagnosis and opinion of disability in 1988. (Tr. 131–132).

Based on all the evidence, the ALJ correctly concluded that even if plaintiff was disabled as of February 1988, when she first developed rheumatoid arthritis, it did not establish disability for purposes of disability insurance benefits.

It is well established that pain unaccompanied by objective findings may nevertheless support a claim for benefits. *Smith v. Califano*, 637 F.2d 968, 973–74 (3d Cir. 1981). Thus, the subjective complaints of pain suffered by the plaintiff must be given careful consideration. Furthermore,

[a]lthough evidence of pain suffered by a claimant may be of necessity subjective in nature, and therefore difficult to evaluate, the administrative factfinder must give serious consideration to such evidence even though it is not fully corroborated by objective examinations and tests performed on the claimant. *See Thorne v. Weinberger*, 530 F.2d 580, 583 (4th Cir.1976); *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir.1974), *cert. denied*, 420 U.S. 931 [95 S.Ct. 1133, 43 L.Ed.2d 403] (1975). While the claimant has the burden of proving that the disability asserted results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between a physical impairment and the claimant's subjective

---

**2.** Dr. Mazza reported examinations of plaintiff on April 26, 1983, October 4, 1983 and July 10, 1988. (Tr. 134).

pain need not be produced. *See Klug v. Weinberger,* 514 F.2d 423, 427 (8th Cir. 1975). There is no question that pain can cause disability within the meaning of the Social Security Act. *See Yawitz v. Weinberger,* 498 F.2d 956, 960–961 (8th Cir.1974).

The Secretary carefully considered plaintiff's subjective complaints of pain, but found that they were not credible to the extent that they would preclude light exertion. (Tr. 17). The ALJ noted that during the period in question, plaintiff received only intermittent treatment and did not require the use of potent analgesics or other modalities of pain management. He also observed that plaintiff did not exhibit clinical signs such as atrophy or neurological deficits. He concluded that, while plaintiff experienced some discomfort as a result of her osteoarthritis, it was not so severe as to be disabling. It is not necessarily inconsistent to find that a plaintiff suffers pain in fact, and yet is not so severely impaired as to meet the stringent test for disability imposed by the Act. *Hames v. Heckler,* 707 F.2d 162, 166 (5th Cir.1983); *Thorne v. Schweiker,* 694 F.2d 170 (8th Cir.1982); *Torres–Rosas v. Bowen,* 678 F.Supp. 420 (S.D.N.Y.1987); *Artrip v. Bowen,* 651 F.Supp. 376 (S.D.N.Y.1987).

█ The Secretary determined that, due to her osteoarthritis, plaintiff could not perform her former work prior to her date last insured. However, based on his review of the evidence discussed above, the Secretary found that plaintiff had the residual functional capacity to perform light work through her date last insured. After then considering plaintiff's age, education and work experience, the Secretary concluded that plaintiff was not disabled as defined by the Act on the date last insured. This Court finds that the decision of the Secretary is supported by substantial evidence and must be affirmed.

█ Plaintiff also claims that the ALJ committed reversible error by failing to advise plaintiff of her right to counsel and a translator at the hearing. However, at the time she requested a hearing, a notation was made by the Social Security Administration that plaintiff was unrepresented and she had been provided with a list of "legal referral and service organizations." (Tr. 85). No indication was given at that time that she had any need of a translator at the hearing. At the hearing, plaintiff was accompanied by her two sons, one of whom stated that he would represent her and assist her in communicating with the ALJ. (Tr. 25). Both sons actively participated throughout the hearing process. Thus, plaintiff was not prejudiced by lack of counsel or lack of a translator and the ALJ did not commit reversible error.

Plaintiff also alleges that the ALJ failed to question her about her condition prior to the date last insured. A review of the record indicates that the ALJ thoroughly explained the importance of the insured status date. (Tr. 26–29). The ALJ informed plaintiff that she must establish disability prior to the date last insured in order to be eligible for disability benefits. (Tr. 26).

After thoroughly evaluating the evidence, the Secretary determined that the plaintiff failed to show she was under a disability within the meaning of the Act on the date last insured. The decision of the Secretary is supported by substantial evidence and is affirmed by this Court.

## CONCLUSION

For the foregoing reasons, this Court concludes that the ALJ's decision denying plaintiff disability benefits is supported by substantial evidence. Accordingly, the Secretary's decision is affirmed.